UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————————— ) | |
| DEFENDERS OF WILDLIFE, JACKSON ) | |
| HOLE CONSERVATION ALLIANCE, ) | |
| NATIONAL WILDLIFE REFUGE ) | |
| ASSOCIATION, GREATER YELLOWSTONE ) | |
| COALITION, WYOMING OUTDOOR ) | Docket No. 1:08-cv-00945-RJL |
| COUNCIL, ) | |
| ) | |
|      Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DIRK KEMPTHORNE, in his official Capacity ) | |
| as the Secretary of the Interior, and H. DALE ) | |
| HALL, in his official capacity as Director, U. S. ) | |
| Fish and Wildlife Service, and STEPHEN ) | |
| GUERTIN, in his official capacity as Regional ) | |
| Director, Region 6, U.S. Fish and Wildlife ) | |
| Service ) | |
| ) | |
|      Defendants, ) | |
| ) | |
| and, ) | |
| ) | |
| STATE OF WYOMING ) | |
| ) | |
|      Applicant-Defendant-Intervenor ) | |
| ——————————————————— ) | |

# APPLICANT-DEFENDANT-INTERVENOR STATE OF WYOMING'S MOTION TO INTERVENE

The State of Wyoming ("State") by and through the office of the Attorney General, hereby moves for leave to intervene as a party defendant in the above-captioned action as a matter of right pursuant to Rule 7(j) of the Local Rules of this Court and Rule 24(a) of the Federal Rules of Civil Procedure. In the alternative, the State respectfully requests that this Court grant permissive intervention pursuant to Fed. R. Civ. 24(b). In support of its motion, the State respectfully refers this Court to its memorandum in support together with its proposed answer filed herewith.

Pursuant to Rule 7(m) of the Local Rules of this Court, undersigned counsel has discussed this motion with counsel for the parties to determine if there is any opposition to the motion. Counsel for Plaintiffs takes no position on the motion, and counsel for Defendants takes no position on the motion.

DATED the 20th day of August, 2008

APPLICANT-DEFENDANT-INTERVENOR, STATE OF WYOMING

Kenneth J. Miller
Senior Assistant Attorney General
kmille2@state.wy.us
C. Levi Martin
Senior Assistant Attorney General
Wyoming Attorney General's Office
123 Capitol Building
Cheyenne, WY 82002
(307) 777-6946
(307) 777-3542 – Facsimile
lmarti@state.wy.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2008, a true and correct copy of the foregoing APPLICANT-DEFENDANT-INTERVENOR STATE OF WYOMING'S MOTION TO INTERVENE was served by placing same in the United States Mail, postage pre-paid, addressed to:

Timothy J. Preso
Sean M. Helle
EARTHJUSTICE
209 S. Willson Avenue
Bozeman, MT 51715

Sierra B. Weaver
DEFENDERS OF WILDLIFE
1130 17th Street NW
Washington, DC 20036

Robert Morgan
NATIONAL WILDLIFE REFUGE
ASSOCIATION
1901 Pennsylvania Ave., NW, Suite 407
Washington, DC 20006

Ronald J. Tenpas
Assistant Attorney General
Lori Caramanian
Environment & Natural Resources Div.
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294

Wyoming Attorney General's Office

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, JACKSON HOLE CONSERVATION ALLIANCE, NATIONAL WILDLIFE REFUGE ASSOCIATION, GREATER YELLOWSTONE COALITION, WYOMING OUTDOOR COUNCIL, | ) ) ) ) ) ) |
| Plaintiffs, | ) Docket No. 1:08-cv-00945-RJL ) ) |
| v. | ) ) |
| DIRK KEMPTHORNE, in his official Capacity as the Secretary of the Interior, and H. DALE HALL, in his official capacity as Director, U. S. Fish and Wildlife Service, and STEPHEN GUERTIN, in his official capacity as Regional Director, Region 6, U.S. Fish and Wildlife Service | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| and, | ) ) |
| STATE OF WYOMING | ) ) |
| Applicant-Defendant-Intervenor | ) ) |

**MEMORANDUM IN SUPPORT OF APPLICANT-DEFENDANT-INTERVENOR
STATE OF WYOMING'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

STANDARD OF REVIEW ...................................................................................... 4

ARGUMENT ............................................................................................................ 5

    I.     THE STATE HAS STANDING TO INTERVENE IN THIS CASE ........... 5

        A.     State Interests .............................................................................. 5

            1.     The State's interest as a sovereign ........................... 6

            2.     The State's socio-cultural interests ........................... 7

            3.     The State's regulatory interest ................................... 8

            4.     The State's economic interest .................................... 9

            5.     The State's involvement in previous litigation over the Elk Refuge and its participation in the NEPA process ......... 10

        B.     "Injury in Fact" ......................................................................... 11

        C.     Causation .................................................................................. 13

        D.     Redressability ........................................................................... 14

    II.    THE STATE SATISFIES THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT ................................................................ 14

        A.     The intervention is timely ........................................................ 15

        B.     The State has interests relating to the subject of the action ............. 16

        C.     The State's interests may be impaired by the outcome of the case ......................................................................................... 16

        D.     The State's interests cannot be adequately represented by the existing parties ........................................................................ 18

    III.   THE STATE MEETS THE REQUIREMENTS FOR PERMISSIVE INTERVENTION ............................................................................. 19

        A.     Federal question creates jurisdiction ....................................... 20

        B.     The State's motion to intervene is timely ................................ 20

        C.      The State will address similar issues of law and fact........................21

CONCLUSION..........................................................................................................21

CERTIFICATE OF SERVICE ......................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153 (D.D.C. 2001) ...................15-17

*Appleton v. Food & Drug Admin.*, 310 F.Supp.2d 194 (D.D.C. 2004) ..............................15

*Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248 (D.C. Cir. 1999) ....................................................................................................................15

\* *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .................................12

*Clajon Prod. Corp. v. Petera*, 854 F.Supp. 843 (D. Wyo. 1994) .........................................6

\* *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) ....................................................................................................4- 6, 12, 15-19

*Dimond v. Dist. of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) ...........................................18

*Envtl. Def. v. Leavitt*, 329 F.Supp.2d 55 (D.D.C. 2004)....................................................20

*Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) ..........................................................................................20

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) ...............6

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981).......................................................6, 15

\* *Fund for Animals v. Jones*, 151 F.Supp.2d 1 (D.D.C. 2001)............................................10

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ......................................5

*Jones v. Prince George's County, Md.*, 348 F.3d 1014 (D.C. Cir. 2003) .........................16

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998)..............................................17

\* *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................5, 11, 13

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) .....................................16

*NRDC v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) ...............................................................5

*Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997) ......................................6

*Sierra Club v. Robertson*, 960 F.2d 83 (8th Cir. 1992) .....................................................17

*Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001) ...................................................... 15

\* *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908 (D.C. Cir. 1989) .......................................................................................................... 13, 14

*Wilderness Soc'y v. Babbitt*, 104 F.Supp.2d 10 (D.D.C. 2000) ............................... 5

## Federal Rules

Fed. R. Civ. P. 24(a) .................................................................................................. 4, 21

FED. R. CIV. P. 24(a)(2) ............................................................................................... 4

FED. R. CIV. P. 24(b) .................................................................................................. 19, 21

FED. R. CIV. P. 24(b)(1)(B) ......................................................................................... 20

FED. R. CIV. P. 24(b)(3) ............................................................................................... 20

## Federal Statutes

5 U.S.C. §§ 701 - 706 ................................................................................................ 1

16 U.S.C. §§ 668dd - 668ee ....................................................................................... 1

16 U.S.C. § 668dd(m) ................................................................................................ 7

28 U.S.C. § 1331 ......................................................................................................... 20

42 U.S.C. §§ 4321 - 4370f ......................................................................................... 1

## Federal Register Notices

66 Fed. Reg. 37,489 (Jul. 18, 2001) ......................................................................... 3

## Wyoming Statutes

WYO. STAT. ANN. § 23-1-103 ..................................................................................... 7

The State of Wyoming ("State"), by and through the Wyoming Attorney General's office and pursuant to Local Rule 7(a) of this Court, hereby submits the following memorandum of law in support of its motion to intervene.

## INTRODUCTION

Plaintiffs initiated this lawsuit against Dirk Kempthorne, in his official capacity as the Secretary of the United States Department of Interior ("DOI"), H. Dale Hall, in his official capacity as the Director of the United States Fish and Wildlife Service ("FWS"), and Stephen Guertin, in his official capacity as the Regional Director, Region 6, of the FWS (hereinafter collectively referred to as "Federal Defendants").  The lawsuit challenges the FWS's Final Environmental Impact Statement ("FEIS"), Record of Decision ("ROD"), and 2007 Bison and Elk Management Plan for the National Elk Refuge ("Management Plan") located in Jackson, Wyoming.  Plaintiffs allege that the FWS's decision to continue the winter feeding of elk and bison on the National Elk Refuge ("Elk Refuge") violates the National Wildlife Refuge System Improvement Act, 16 U.S.C. §§ 668dd - 668ee ("Refuge Improvement Act"), the National Environmental Policy Act, 42 U.S.C. §§ 4321 - 4370f ("NEPA"), and the Administrative Procedure Act, 5 U.S.C. §§ 701 - 706 ("APA").  Plaintiffs contend that continued feeding operations on the Elk Refuge perpetuate unnaturally dense concentrations of elk and bison on the range, causing and fueling the spread of wildlife disease and resulting in significant ecosystem-wide impacts. (Pls.' Compl. at ¶ 10).[1]

---

[1] Plaintiffs' ultimate goal is to eliminate winter feeding.  *See* Defenders of Wildlife website,    http://www.defenders.org/programs_and_policy/in_the_courts/legal_docket/bison_and_elk_refuge_management_plan.php

The State seeks to intervene as a party defendant in this action in order to protect its substantial interests in managing the wildlife within the state, including the elk and bison that spend a portion of each year on the Elk Refuge. The State, through the Wyoming Game and Fish Department ("WGFD"), manages all Wyoming wildlife, and that responsibility encompasses a broad range of programs and activities. The WGFD operates and maintains numerous feeding programs to maintain herd levels on and off the Elk Refuge, possesses regulatory and licensing authority over hunting and fishing activities that occur within the state, and monitors and controls the spread of disease among wildlife and domestic livestock. Those substantial interests, along with the State's participation in prior litigation in this Court over the Elk Refuge and in the NEPA planning and review process that is the subject of Plaintiffs' lawsuit, give it unique expertise, perspective, and insight for this action.

## FACTUAL AND PROCEDURAL BACKGROUND

The Elk Refuge is a 24,700-acre unit of the National Wildlife Refuge System, administered by the FWS and located in Teton County, Wyoming, near the town of Jackson and in the valley commonly known as Jackson Hole. (ROD at 1). After substantial numbers of elk died during several severe winters in the late 1800s and early 1900s, the citizens of Jackson Hole, along with state and federal officials, began feeding elk in the winter of 1910-11. (Management Plan, at iv). In 1912, Congress appropriated $45,000 for the purchase of lands and maintenance of a "winter game (elk) reserve," which subsequently became the Elk Refuge. (*Id.*) The elk and bison herds located in the Jackson Hole area comprise one of the largest concentrations of elk and bison in North

2

America, with an estimated population of 13,000 elk and 1,000 bison. (*Id.*)  The Elk Refuge provides winter habitat and supplemental feeding for elk and bison herds that migrate across several jurisdictional boundaries in northwestern Wyoming. (ROD at 1-2).

In July 2001, the FWS and the National Park Service ("NPS") announced their intention to prepare a management plan and environmental impact statement addressing how the elk and bison herds could be managed on the Elk Refuge and in Grand Teton National Park.  66 Fed. Reg. 37,489 (Jul. 18, 2001); (ROD at 1-2).  In July 2005, the agencies released a draft management plan and draft environmental impact statement for public review and comment, and in February 2007, the Management Plan and FEIS were published. (ROD at 11).

In April 2007, the FWS and NPS issued the ROD and Management Plan, which provides that bison and elk herds and their habitat will be managed with an emphasis on improving winter, summer, and transitional range, ensuring that the biotic integrity and environmental health of the resources are sustained over the long term.  (ROD at 5). Pursuant to the Management Plan, the agencies are to work in "close cooperation with WGFD, existing conditions, trends, new research findings, and other changing circumstances [in order to] provide the basis for developing and implementing a dynamic framework for decreasing the need for supplemental food on the refuge."  (*Id.*) Essentially, the Management Plan elects to continue the winter feeding operation on the Elk Refuge and gives the WGFD an effective veto with respect to any future decision to eliminate the feeding program. (Management Plan at 137).

On June 3, 2008, Plaintiffs filed their complaint for declaratory and injunctive relief, asking the Court to declare the ROD and Management Plan unlawful under the Refuge Improvement Act and to declare the FEIS unlawful under the NEPA. (Pls.' Compl. at 19). Plaintiffs request that the case be remanded for the preparation of a new environmental impact statement, ROD, and Management Plan. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(a) sets forth the parameters for intervention as of right and states in pertinent part as follows:

> On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). In evaluating motions for intervention as of right, this Court considers the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by the existing parties.

*County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 43 (D.D.C. 2007) (citations omitted). Furthermore, a prospective intervenor must demonstrate that it has Article III constitutional standing. *Id.* (citations omitted). This Court and the District of Columbia Circuit have taken a liberal approach to intervention. *See Wilderness Soc'y v. Babbitt*,

104 F.Supp.2d 10, 18 (D.D.C. 2000), (*citing NRDC v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977)).

## ARGUMENT

### I.    THE STATE HAS STANDING TO INTERVENE IN THIS CASE

A party seeking to intervene as of right in the D.C. Circuit must demonstrate that it has standing under Article III of the United States Constitution. *County of San Miguel*, 244 F.R.D. at 43 (citation omitted).  Since a prospective intervenor's Article III standing presents a material question as to the court's jurisdiction, the court must address the standing issue before considering the factors for evaluating its intervention as of right. *Id.*  "To establish standing under Article III, a prospective intervenor – like any party – must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### A.    State Interests

The State satisfies the requirements for Article III standing in the present case because it has substantial interests that will be injured if Plaintiffs prevail and the winter feeding program on the Elk Refuge is enjoined or curtailed.  The State's interests include: (1) a sovereign interest in properly managing wildlife within Wyoming; (2) a substantial interest in the socio-cultural benefits associated with the operation of the Elk Refuge; (3) important regulatory and licensing interests in hunting and fishing activities that occur in Wyoming and on the Elk Refuge; (4) a significant economic interest in any action affecting its wildlife; and (5) a vested interest due to its participation in previous litigation

over the Elk Refuge and its role as a cooperating entity throughout the NEPA planning
and review process that resulted in the Management Plan and ROD that are the subject of
this action.

**1.  The State's interest as a sovereign.**

The State has a sovereign interest in managing the wildlife within its borders.
State sovereigns have a legally protected interest in litigation affecting the management
of natural resources under their control. *See Sierra Club v. City of San Antonio*, 115 F.3d
311, 315 (5th Cir. 1997) (Texas had sovereign interest in its aquifer management statute
sufficient to warrant intervention as of right); *Forest Conservation Council v. U.S. Forest
Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (Arizona's sovereign duty to manage state
lands, which were adjacent to federal lands, constituted a legally protectable interest).
This Court has stated that "[a]n intervenor's interest is obvious when he asserts a claim to
property that is the subject matter of the suit." *County of San Miguel*, 244 F.R.D. at 46,
*quoting Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).

Importantly, federal courts have recognized the sovereign authority retained by the
states in managing wildlife. *See Clajon Prod. Corp. v. Petera*, 854 F.Supp. 843, 848 (D.
Wyo. 1994) (recognizing that states own wildlife in their sovereign capacity for the
common benefit and interest of all its citizens).  Congress has also recognized states'
sovereignty in managing wildlife.  The Refuge Improvement Act states that:

> [n]othing in this Act shall be construed as affecting the
> authority, jurisdiction, or responsibility of the several States
> to manage, control, or regulate fish and resident wildlife
> under State law or regulations in any area within the System.
> Regulations permitting hunting and fishing of fish and

> resident wildlife within the System shall be, to the extent
> practicable, consistent with State fish and wildlife laws,
> regulations, and management plans.

16 U.S.C. § 668dd(m). In addition, the Wyoming legislature has vested the Wyoming

Game and Fish Commission with authority to regulate all wildlife contained within

Wyoming as follows:

> For the purpose of this act, all wildlife in Wyoming is the
> property of the state. It is the purpose of this act and the
> policy of the state to provide an adequate and flexible system
> for control, propagation, management, protection and
> regulation of all Wyoming wildlife.

WYO. STAT. ANN. § 23-1-103.

Thus, the federal courts, Congress, and the Wyoming legislature all recognize that

the State possesses and maintains sovereignty over managing wildlife located on federal

lands, which in this case includes elk and bison located on the Elk Refuge.

## 2. The State's socio-cultural interests.

Elk figure prominently in Jackson Hole's history and culture. In the late 1800s,

when elk populations all over North America were being extirpated, the residents of

Jackson Hole protected elk from large-scale commercial hunting operations.

(Management Plan, at iv). As noted above, in 1912, Congress set aside land that would

become the Elk Refuge as a winter game reserve, and supplemental feeding of elk has

continued during most winters since then. (ROD at 1-2).

Additionally, bison in the Jackson Hole area are popular with residents and

visitors as a symbol of the West. The presence of prehistoric bison remains indicates that

bison had long inhabited the Jackson Hole area. (Management Plan, at iv). By the mid-

1880s, bison were extirpated outside Yellowstone National Park, and in 1948, twenty bison were reintroduced to the 1,500-acre Jackson Hole Wildlife Park, where they were maintained in a large enclosure. (*Id.*) In 1968, the herd escaped from the wildlife park, and the decision was subsequently made to allow them to range freely. (*Id.*) In 1975, the small bison herd began wintering on the Elk Refuge and, by 1980, began eating supplemental feed that was being provided for the elk herd. (ROD at 2).

For nearly a century, the State has been involved in the operation of the Elk Refuge and the winter feeding of elk thereon. Bison are also a key element of the State's western heritage, and for nearly thirty years bison have taken advantage of the supplemental feeding program on the Elk Refuge. Not surprisingly, therefore, one of the significant issues set forth in the Management Plan is "cultural opportunities and western traditions and lifestyles[.]" (ROD at 1). The foregoing facts show that the State has important socio-cultural interests related to elk and bison and the western cultural traditions they embody. The State's long-standing role in the operation and maintenance of the Elk Refuge and its supplemental feeding program is critical to maintaining those western cultural traditions and the social fabric of the Jackson Hole region.

### 3. The State's regulatory interest.

The State also has a regulatory interest in the overall management of its wildlife. In furtherance of its duty to manage wildlife within Wyoming, the WGFD has developed a comprehensive regulatory and hunter licensing scheme to manage elk and bison located on and off the Elk Refuge. (Emmerich Decl. at ¶ 14). The winter feeding program is a key element to that regulatory framework and serves to reduce over-winter mortality rates

and enables the WGFD to maintain herd populations that are commensurate with summer habitat capacities. (Emmerich Decl. at ¶ 12). Importantly, between the years 1992 and 2004, the WGFD treated nearly 69,000 acres of land in Wyoming to improve elk habitat, and elk that survive the winter subsequently use that summer habitat. (*Id.*) By reducing over-winter mortality rates and improving wildlife habitat, the WGFD manages elk and bison in Wyoming in order to provide opportunities for hunters that are commensurate with proper land management and public demand.

**4. The State's economic interest.**

In addition to the regulatory interest the State has in managing its native wildlife, the State also has an economic interest in any action affecting its wildlife. In Fiscal Year 2008, the State spent $1,391,000 operating and maintaining its own twenty-two state feed grounds, thus indicating its dedicated interest and unique level of expertise in the supplemental feeding of wildlife (Emmerich Decl. at ¶ 13). Moreover, as a result of increased hunter opportunity arising from the State's effective management of its native elk and bison herds, hunting license revenue generated from the Elk Refuge in Fiscal Year 2008 amounted to nearly $23,000. (Emmerich Decl. at ¶ 15). Total hunter expenditures for that period amounted to approximately $312,000. (*Id.*) The State also reimburses the FWS for a portion of the feed that is used on the Elk Refuge. That expense amounted to $200,000 for Fiscal Year 2008, and the projected cost for Fiscal Year 2009 is $450,000. (Emmerich Decl. at ¶ 16). Thus, the State clearly has an economic interest in any decision by the Court that would reduce elk and bison herds on the Elk Refuge.

5. **The State's involvement in previous litigation over the Elk Refuge and its participation in the NEPA process.**

The State's involvement in litigation concerning the Elk Refuge goes back to 1996 when the WGFD cooperated with the FWS and the Bridger-Teton National Forest in the preparation of a bison management plan for Jackson and the surrounding area. That plan was subsequently challenged in this Court in a case in which the State was allowed to intervene. *See Fund for Animals v. Jones*, 151 F.Supp.2d 1 (D.D.C. 2001). The Court held that the federal defendants had violated the NEPA and the APA by omitting the impact of the elk supplemental-feeding program on the bison population. *Id.* at 5. That litigation was resolved nearly ten years later following the federal defendants' completion of a new environmental impact statement and with a stipulation of dismissal entered into by the parties. Importantly, as an intervenor in that case, the State was involved throughout the process of preparing the environmental impact statement, then in negotiating the terms and conditions of the stipulated dismissal. The State's involvement as a party in that case gives it a special and unique interest in how the current litigation is resolved and what the resultant effects are on the elk, bison, and other wildlife located on the Elk Refuge and the lands adjacent thereto.

Moreover, the WGFD participated as a cooperating entity throughout the NEPA planning and review process that led to the Management Plan and ROD that are the subject of this action. (ROD at 1). For example, given the substantial role that the Elk Refuge plays in the overall habitat of the Jackson elk and bison herds, and the effects those herds can have on surrounding habitats, one of the stated purposes of the

Management Plan was to contribute to the herd objectives set by the WGFD. (ROD at 2). In addition, one of the stated goals of the Management Plan is "Disease Management," such that the federal agencies are to "[w]ork cooperatively with the state of Wyoming and others to reduce the prevalence of brucellosis in the bison and elk populations[.]" (ROD at 4).

The State is also a key player in the implementation of the Management Plan. One of the key habitat conservation and population management elements of the Management Plan is to "[i]dentify criteria for beginning and ending feeding each year in consultation with WGFD." (ROD at 5). "Working in collaboration with WGFD to maintain the Jackson elk herd objective of 11,000" and "[w]ork[ing] collaboratively with WGFD to maintain and ensure a genetically viable population of about 500 bison" are two key provisions contained in the Management Plan. (ROD at 6-7). "A public bison hunt will be initiated on the refuge and managed in accordance with the State of Wyoming's licensing regulations" and permitting "WGFD to vaccinate elk and bison for brucellosis on the refuge" are also stated elements of the Management Plan. (ROD at 7).

The foregoing discussion demonstrates that the State has varied and substantial interests in the Elk Refuge which provide the foundation for the State having Article III standing to participate as an intervening party in this case.

## B.   "Injury in Fact"

"Injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. (citations omitted) (internal quotations omitted.)   "For standing

11

purposes, the injury a party claims must be distinct and palpable, . . . and not abstract or conjectural or hypothetical." *County of San Miguel*, 244 F.R.D. at 44 (citation omitted). When a party alleges future injury alone, it "must demonstrate a realistic danger of sustaining a direct injury." *County of San Miguel*, 244 F.R.D. at 44, *quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). However, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt*, 442 U.S. at 298. (citations omitted).

If Plaintiffs in this case are successful in obtaining their ultimate goal of eliminating all feeding on the Elk Refuge, the State will suffer direct injury. Elimination of elk feeding will put the State in an untenable, if not impossible, situation of dealing with mass herds of starving elk and bison that will no longer be sustained by the supplemental feeding program that has existed for nearly a century on the Elk Refuge and in the Jackson Hole region. (Emmerich Decl. at ¶ 18). The citizens of Jackson Hole, the WGFD, and other state agencies will be faced with free-ranging elk and bison, starving animals and increased herd mortality, potential widespread disease outbreaks due to elk and bison co-mingling with domestic livestock, not to mention the increased potential for property damage created by roaming elk and bison herds looking for a food source, as well as public safety issues resulting from elk and bison on the roadways. (*Id.*)

The State's sovereign interest in managing Wyoming's wildlife will be heavily burdened, and key socio-cultural elements of its western cultural heritage are at risk if Plaintiffs succeed in eliminating winter feeding on the Elk Refuge. Additionally, the

12

State's regulatory authority over elk and bison hunting will suffer, and revenues from hunter licensing will decrease. The State's injuries are impending, and it should not have to wait for those injuries to occur in order to have standing to seek preventive relief in this case.

## C.    Causation

The "injury in fact" must be fairly traceable to the challenged action. *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 911 (D.C. Cir. 1989). One who seeks Article III standing has to *credibly* allege that he faces a *realistic* threat from the future application (or lack of application) of the challenged action. *Id.* at 912. Article III standing "depends considerably upon whether the [party] is [itself] an object of the action at issue." *Lujan*, 504 U.S. at 561. "If [it] is, there is ordinarily little question that the action or inaction has caused [the] injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62. When the asserted injury, however, arises from the government's unlawful regulation of *someone else*, much more is needed. *Id.* at 562. Importantly here, the State and its citizens, its land and wildlife resources, and its revenue from hunting on the Elk Refuge are all the object of the action at issue.

If the Elk Refuge is eliminated, the State will lose substantial amounts of licensing revenue from hunting on the Elk Refuge and from overall hunter expenditures. Moreover, the burden of dealing with mass herds of starving elk and bison that will leave the Elk Refuge, along with the related costs and impacts to human health and safety and the spread of wildlife disease, are all concrete injuries that will be caused if Plaintiffs are successful in eliminating the winter feeding program on the Elk Refuge. The State

credibly alleges a realistic threat of injury because the relief sought by Plaintiffs will cause the injuries outlined above.

**D.    Redressability**

Article III standing requires that the "injury in fact" "is likely to be redressed by a favorable decision." *United Transp. Union,* 891 F.2d at 911. (citation omitted).  If Plaintiffs prevail in this case and eventually meet their goal of eliminating the supplemental feeding program on the Elk Refuge, the State will suffer those injuries described herein.  If the Court issues a decision favorable to the Federal Defendants, the State will not lose important revenues from hunter licensing and expenditures, nor will it be faced with the untenable situation of managing massive herds of starving elk and bison and dealing with the associated public health and safety concerns.    Under these circumstances and based on the foregoing reasons, the State has Article III standing to participate in this action.

**II.    THE STATE SATISFIES THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT**

In addition to having standing to participate in this case, the State meets the remaining Rule 24(a) requirements for intervention as a matter of right.  The State's motion to intervene is timely, it has significant protectable interests which may be impaired if relief is granted, and the existing parties cannot adequately represent the State's interests.    An applicant seeking intervention as a defendant to uphold a government agency's action must show that "it will be injured in fact by the setting aside of the government's action it seeks to defend, that the injury will have been caused by

that invalidation, and the injury would be prevented if the government action is upheld. "

*Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001).

**A.    The intervention is timely.**

The Court determines whether a request for intervention is timely from the circumstances of the case pursuant to its sound discretion. *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999). Whether a motion to intervene is timely made is "determined from all the circumstances, including the purpose for which intervention is sought . . . and the improbability of prejudice to those already in the case." *Foster*, 655 F.2d at 1324. (citations omitted). Relevant considerations include: (1) the stage of the proceedings; (2) the purpose for the applicant seeking the intervention; (3) the need for intervention to preserve the applicant's rights; and (4) whether the motion will result in prejudice to the original parties. *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (citation omitted).

Here, the State's motion to intervene is timely because the State's intervention causes no delay in the proceeding, and existing parties will not be prejudiced. *See Appleton v. Food & Drug Admin.*, 310 F.Supp.2d 194, 197 (D.D.C. 2004) (determining that no prejudicial delay occurred and motion to intervene was timely when filed sixty days after complaint). *See also County of San Miguel*, 244 F.R.D. at 46 (motion to intervene was timely when filed just over three months after the filing of plaintiffs' complaint). Plaintiffs filed their Complaint on June 3, 2008, the Federal Defendants filed their answer on August 11, 2008, and the Court has neither set a hearing or trial date nor made any jurisdictional or merits rulings in the case. Under these circumstances, there

has been and will be no undue delay, and the existing parties will suffer no prejudice by allowing the State to intervene in the case. The State's motion to intervene is therefore timely.

**B.     The State has interests relating to the subject of the action.**

A party can demonstrate that a legally protected interest exists by satisfying the requirements of standing. *County of San Miguel*, 244 F.R.D. at 46; *see also, Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003) (citations omitted) (reasoning that because the intervenor-applicant had suffered a cognizable injury sufficient to establish Article III standing, she also had the requisite interest under Rule 24); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (citations omitted) (explaining that the party seeking intervention "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24"). As demonstrated above, the State possesses substantial interests in the subject matter of this lawsuit, and there is a realistic danger that those interests will sustain direct injuries if Plaintiffs prevail. Because the State has demonstrated that it meets Article III standing requirements, it has also demonstrated the existence of a legally-protected interest for purposes of Rule 24(a) intervention.

**C.     The State's interests may be impaired by the outcome of the case.**

In determining whether an intervenor applicant meets the Rule 24(a) requirement that it be so situated that disposing of the action may, as a practical matter, impair or impede the applicant's ability to protect its interests, the reviewing court looks to the practical consequences the applicant will suffer if intervention is denied. *Am. Horse*

*Prot. Ass'n, Inc.*, 200 F.R.D. at 158. To satisfy the practical impairment requirement, the movant must show that the disposition of the action may impair its legally protectable interest. *County of San Miguel*, 244 F.R.D. at 47.

Here, if the Court grants Plaintiffs' requested relief, the State's substantial interests will be impaired. In addition to the injuries discussed above, if the Management Plan and ROD are set aside, all of the State's cooperative efforts throughout the lengthy NEPA planning and review process will be negated. In *American Horse*, the intervenor-applicant satisfied the impairment element when it had participated in the decision making process and was then subject to a resultant agency program, which directly impacted its obligations. *Am. Horse Prot. Ass'n, Inc.*, 200 F.R.D. at 158. The Court concluded that the resolution plaintiff sought would "eviscerate the [intervenor-applicant's] effort in creating the Plan at issue." *Id.* A like result will occur in the present case if Plaintiffs prevail, and such injury is preventable if the Management Plan and ROD are upheld.

As discussed above, the State has a significant interest in managing its wildlife and receiving revenues pursuant to its regulatory and hunter licensing scheme in that regard. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (economic interest of local school districts in timber cutting proceeds, which could be impacted by the remedy sought by environmental groups challenging the associated environmental impact statement, were direct, substantial and of adequate public interest to justify intervention); *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (the State of Arkansas' economic interest in promoting the state economy and securing tax revenues was

17

sufficient to warrant intervention in a lawsuit challenging the defendants' forest plan). If Plaintiffs prevail in this case and the winter feeding program on the Elk Refuge is enjoined or curtailed, the State will experience a significant reduction in hunting license revenues and corresponding hunter expenditures.

For the foregoing reasons, the State satisfies the practical impairment requirement for Rule 24(a) intervention. If Plaintiffs' requests for relief are granted, the State's substantial interests in the subject matter of this case will be impaired. If Plaintiffs do not prevail, the State's substantial interests will be neither injured nor impaired.

**D.    The State's interests cannot be adequately represented by the existing parties.**

None of the existing parties to this action can adequately represent the State's significant interests in the case. To satisfy the inadequate representation requirement, the applicant must show "that representation of its interest may be inadequate; and the burden of making that showing should be treated as minimal." *County of San Miguel*, 244 F.R.D. at 48 (citation omitted). The requirement of showing inadequate representation is not onerous. *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

By taking the position that the Management Plan and ROD are unlawful, Plaintiffs have clearly taken a position in opposition to that of the State. Nor do Plaintiffs share the same sovereign, socio-cultural, regulatory, and economic interests as does the State. Additionally, the Federal Defendants cannot adequately represent the interests of the State because they must manage public lands pursuant to federal laws and regulations – in this case, those mandates set forth by the Refuge Improvement Act and the NEPA.

Although the State and the Federal Defendants share a common interest in defending the ROD and Management, that shared interest does not guarantee adequate representation of the State's varied and substantial interests in this case. *See County of San Miguel*, 244 F.R.D. at 48. "A shared general agreement does not necessarily ensure agreement in all particular respects." *Id.* (citation omitted).

Moreover, the State may present arguments that existing parties may not raise, and the State's expertise may prove useful and necessary to any settlement discussions that may occur. If the Federal Defendants attempt to negotiate a settlement without the State's involvement as a party, the State's substantial interests may be compromised by a settlement agreement that emphasizes federal interests and priorities at the expense of those possessed by the State. The State has unique expertise, insight, and perspective for this case, and only the State can adequately represent its various and related interests that are implicated in this action. In summary, the State has shown that it satisfies the requirements for intervention as of right pursuant to Rule 24(a). Its motion to intervene is timely, it has interests that will be impaired if Plaintiffs prevail, and those interests cannot be adequately protected by the existing parties. Thus, the State should be allowed to intervene as of right in this case.

## III.    THE STATE MEETS THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

In the alternative, the State should be allowed permissive intervention in this matter pursuant to FED. R. CIV. P. 24(b). Rule 24(b) states in pertinent part that "[o]n timely motion, the court may permit anyone to intervene who has a claim or defense that

shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).  Permissive intervention should be allowed on a showing of the following: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Envtl. Def. v. Leavitt*, 329 F.Supp.2d 55, 66 (D.D.C. 2004) (citation omitted).  The court enjoys considerable discretion in deciding whether intervention should be permitted.  *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

## A.    Federal question creates jurisdiction.

The State meets the first requirement for permissive intervention because an independent ground for subject matter jurisdiction exists.  This case involves the review of federal administrative action based on federal law under the Refuge Improvement Act, the NEPA, and the APA.  Federal question jurisdiction therefore exists.  *See* 28 U.S.C. § 1331.

## B.    The State's motion to intervene is timely.

As set forth above, the State's motion to intervene is timely and will neither delay this proceeding nor prejudice the existing parties.  The State has tendered its proposed answer with this motion and supporting memorandum and is prepared to participate in this litigation on the same schedule as the Federal Defendants.

C.    **The State will address similar issues of law and fact.**

The defenses the State asserts in its proposed answer filed herewith present necessarily the same issues of law that the Federal Defendants will raise; namely, that the FEIS, ROD, and Management Plan are lawful under the Refuge Improvement Act, the NEPA, and the APA.  (*See* State's Proposed Answer).  In summary, the requirements for permissive intervention are met, and the State requests the Court to grant permissive intervention so that the State may represent and protect its important interests in this case.

<u>CONCLUSION</u>

For the foregoing reasons, the State of Wyoming should be allowed to intervene as a matter of right under Rule 24(a).  In the alternative, the State of Wyoming should be permitted to intervene under Rule 24(b).

DATED the 20th day of August, 2008.

APPLICANT DEFENDANT-
INTERVENOR, STATE OF
WYOMING

_____
Kenneth J. Miller
Senior Assistant Attorney General
kmille2@state.wy.us

C. Levi Martin
Senior Assistant Attorney General
Wyoming Attorney General's Office
123 Capitol Building
Cheyenne, WY 82002
(307) 777-6946
(307) 777-3542 – Facsimile
lmarti@state.wy.us

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2008, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF APPLICANT-DEFENDANT-INTERVENOR STATE OF WYOMING'S MOTION TO INTERVENE was served by placing same in the United States Mail, postage pre-paid, addressed to:

Timothy J. Preso
Sean M. Helle
EARTHJUSTICE
209 S. Willson Avenue
Bozeman, MT 51715

Sierra B. Weaver
DEFENDERS OF WILDLIFE
1130 17th Street NW
Washington, DC 20036

Robert Morgan
NATIONAL WILDLIFE REFUGE
ASSOCIATION
1901 Pennsylvania Ave., NW, Suite 407
Washington, DC 20006

Ronald J. Tenpas
Assistant Attorney General
Lori Caramanian
Environment & Natural Resources Div.
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294

Wyoming Attorney General's Office

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| —————————————————— ) <br> DEFENDERS OF WILDLIFE, JACKSON ) <br> HOLE CONSERVATION ALLIANCE, ) <br> NATIONAL WILDLIFE REFUGE ) <br> ASSOCIATION, GREATER YELLOWSTONE ) <br> COALITION, WYOMING OUTDOOR ) <br> COUNCIL, ) <br> ) <br>      Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DIRK KEMPTHORNE, in his official Capacity ) <br> as the Secretary of the Interior, and H. DALE ) <br> HALL, in his official capacity as Director, U. S. ) <br> Fish and Wildlife Service, and STEPHEN ) <br> GUERTIN, in his official capacity as Regional ) <br> Director, Region 6, U.S. Fish and Wildlife ) <br> Service ) <br> ) <br>      Defendants, ) <br> ) <br> and, ) <br> ) <br> STATE OF WYOMING ) <br> ) <br>      Applicant-Defendant-Intervenor ) <br> —————————————————— ) | Docket No. 1:08-cv-00945-RJL |

---

## DECLARATION OF JOHN EMMERICH

---

Declarant, John Emmerich, hereby swears and affirms to the following:

1.    I am over eighteen years of age. I have personal knowledge of the matters set forth in this Declaration, and I am competent to testify as a witness before the Court in this proceeding.

2.    I earned my bachelor's degree in wildlife management and conservation from the University of Wyoming in 1972, and a master's degree in wildlife biology from South Dakota State University in 1978.

3.    I am an employee of the Wyoming Game and Fish Department (WGFD). I have worked for the WGFD for more than twenty-nine years. My current job title is deputy director of external operations. I have been employed with the WGFD in that capacity since June 15, 2006.

4.    The Wyoming Game and Fish Commission ("Commission") is responsible for the protection and management of all wildlife in Wyoming, with the exception of a few federal enclaves located in Wyoming. The WGFD carries out these duties under the Commission's direction and supervision. No other entity has statewide responsibility for the management of wildlife and wildlife resources within Wyoming.

5.    I have been working with Wyoming wildlife issues since 1979, including those involving the National Elk Refuge ("Elk Refuge") located in Jackson Hole. I was a district terrestrial wildlife biologist in Lander, Wyoming, for thirteen years and the wildlife management coordinator in Cody, Wyoming, for ten years. In Cody, I coordinated the overall terrestrial wildlife program for the Cody region, including supervising three terrestrial wildlife biologists. I served as the assistant chief of the wildlife division in Cheyenne, Wyoming, for three and one-half years prior to taking my

current position as deputy director.  As assistant wildlife division chief, I supervised the statewide terrestrial wildlife management program, including monitoring the operation of the Elk Refuge.  I am a member of the Wyoming Wildlife Federation, the Wyoming Chapter of the Wildlife Society, as well as other conservation organizations.

6.    As the assistant wildlife division chief and deputy director of external operations, I have personal knowledge regarding Wyoming's role as a cooperating entity with the U.S. Fish and Wildlife Service ("FWS") and its operation of the Elk Refuge.

7.    The Elk Refuge was established by Congress in 1912 to address the fact that there was an insufficient amount of winter range to support the numbers of elk that had existed in Jackson Hole since the early 1900s.  Winter feeding reduced winter mortality and kept elk numbers high, while at the same time reduced elk depredation of haystacks and livestock pastures in Jackson Hole.

8.    Following litigation that began in 1998 over the public hunting of bison on the Elk Refuge, the FWS and the National Park Service ("NPS") decided to prepare a joint management plan to address concerns over the management of elk and bison on the Elk Refuge.  The WGFD participated throughout the lengthy environmental review process that followed.  Throughout that planning effort it was made clear that the WGFD would be an important cooperating agency in the operation of the Elk Refuge, particularly with regard to meeting elk and bison herd objectives.

9.    In February, 2007, after a substantial public review and comment period, the FWS and NPS published the Final Bison and Elk Management Plan and Environmental Impact Statement ("Management Plan"), which provides substantial

guidance and direction for managing the Jackson elk and bison herds over the next fifteen years.

10.     Elk and bison populations migrate across several jurisdictional boundaries, requiring cooperation and coordination among various agencies and jurisdictions with differing legal mandates and jurisdictional constituents.  Successful implementation of the Management Plan therefore requires a close working relationship between the WGFD and the federal agencies involved to address issues such as the criteria for supplemental feeding, strategies (including fencing) for reducing conflicts on private lands, procedures for vaccination, and regulating elk and bison hunts on the Elk Refuge.

11.     In addition, due to the interrelated nature of the various ecosystems within Wyoming, the management of the elk and bison and their respective habitats necessarily impacts other species and corresponding habitats.

12.     Between the years 1992 and 2004, for example, the WGFD treated nearly 69,000 acres of land in Wyoming to improve elk habitat, and elk that survive the winter subsequently use that summer habitat.  The winter feeding program on the Elk Refuge is a key element to Wyoming's regulatory interest in the overall management of its wildlife, and it serves to reduce over-winter mortality rates and enables the WGFD to maintain herd populations that are commensurate with summer habitat capacities.

13.     Further, the WGFD maintains and operates twenty-two feedgrounds across Wyoming and is therefore dedicated to, and has unique expertise in, the supplemental feeding of wildlife within the state.  In Fiscal Year 2008, Wyoming spent $1,391,000 on the operation of those feedgrounds.

14.    The WGFD has developed a comprehensive regulatory and hunter licensing scheme to manage elk and bison located on and off the Elk Refuge.

15.    As a result of increased hunter opportunity arising from the WGFD's management of its native elk and bison herds, hunting license revenue generated from elk and bison hunts on the Elk Refuge in Fiscal Year 2008 amounted to nearly $23,000. Total hunter expenditures for that period amounted to approximately $312,000.

16.    The WGFD, working in cooperation with the FWS and NPS, is currently implementing the Management Plan in order to achieve its desired goals and objectives. In that regard, the WGFD reimburses the FWS for a portion of the feed that is used on the Elk Refuge. That expense amounted to $200,000 in Fiscal Year 2008, and the projected cost for Fiscal Year 2009 is $450,000.

17.    The Elk Refuge has existed in Jackson Hole, Wyoming, for almost a century.    The WGFD has incorporated decades of research, field studies, and management strategies, including spending nearly a decade working with the FWS and NPS on the environmental planning and review process that led to the adoption of the Management Plan at issue in this case.

18.    If the supplemental feeding program on the Elk Refuge is enjoined or curtailed, the WGFD will be faced with the untenable, if not impossible, situation of dealing with mass herds of starving elk and bison that will no longer be sustained by that feeding program that has existed for nearly a century on the Elk Refuge and in the Jackson Hole region. The citizens of Jackson Hole, the WGFD, and other state agencies will be faced with free-ranging elk and bison, starving animals and increased herd

mortality, potential widespread disease outbreaks due to elk and bison co-mingling with domestic livestock, not to mention the increased potential for property damage created by roaming elk and bison herds looking for a food source, as well as public safety issues resulting from elk and bison on the roadways.

19.    Wyoming's interests in managing its wildlife and natural resources, including the elk and bison on the Elk Refuge, protecting the private property rights of its citizens, ensuring public health and safety, and promoting the Western heritage and outdoor lifestyle of its residents are all unique to Wyoming.

FURTHER DECLARANT SAYETH NAUGHT.

DATED this 19th day of August, 2008.

_Jm Emmerich_
John Emmerich

STATE OF WYOMING              )
                                              )SS
COUNTY OF LARAMIE        )

The foregoing Declaration of John Emmerich was subscribed and sworn to before me by John Emmerich this 19th day of August, 2008.  Witness my hand and official seal.

(Seal)

KaAnn J. Tray – NOTARY PUBLIC
COUNTY OF LARAMIE    STATE OF WYOMING
My Commission Expires Dec. 7, 2008

_Notary Public_
My Commission expires:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ──────────────────────── ) | | |
| DEFENDERS OF WILDLIFE, JACKSON ) | | |
| HOLE CONSERVATION ALLIANCE, ) | | |
| NATIONAL WILDLIFE REFUGE ) | | |
| ASSOCIATION, GREATER ) | | |
| YELLOWSTONE COALITION, ) | Docket No. 1:08-cv-00945-RJL |
| WYOMING OUTDOOR COUNCIL, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| DIRK KEMPTHORNE, in his official ) | | |
| Capacity as the Secretary of the Interior, and ) | | |
| H. DALE HALL, in his official capacity as ) | | |
| Director, U. S. Fish and Wildlife Service, and ) | | |
| STEPHEN GUERTIN, in his official capacity ) | | |
| as Regional Director, Region 6, U.S. Fish and ) | | |
| Wildlife Service ) | | |
| ) | | |
| Defendants, ) | | |
| ) | | |
| and, ) | | |
| ) | | |
| STATE OF WYOMING ) | | |
| ) | | |
| Applicant-Defendant-Intervenor ) | | |
| ──────────────────────── ) | | |

**[PROPOSED] ANSWER OF APPLICANT-DEFENDANT-INTERVENOR STATE
OF WYOMING**

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Applicant-Intervenor-Defendant, the State of Wyoming ("State") answers the COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF ("COMPLAINT") filed by Plaintiffs and asserts its affirmative defenses as follows:

1.    The first sentence in paragraph 1 of the COMPLAINT makes no allegations which require a response or answer. To the extent that a response or answer is required, the State denies the allegations in the first sentence of paragraph 1. The State denies the remaining allegations in paragraph 1 of the COMPLAINT.

2.    The State admits the allegations in paragraph 2.

3.    The State admits the allegations in paragraph 3.

4.    Paragraph 4 of the COMPLAINT states legal conclusions for which no answer or response is necessary. To the extent that an answer or response is required, the State denies the allegations in paragraph 4.

5.    The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the COMPLAINT, and therefore denies the allegations in paragraph 5.

6.    The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the COMPLAINT, and therefore denies the allegations in paragraph 6.

7.      The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the COMPLAINT, and therefore denies the allegations in paragraph 7.

8.      The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the COMPLAINT, and therefore denies the allegations in paragraph 8.

9.      The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the COMPLAINT, and therefore denies the allegations in paragraph 9.

10.     The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 10 of the COMPLAINT, and therefore denies the allegations in the first sentence of paragraph 10. The State denies the allegations in the remaining portion of paragraph 10.

11.     The State denies the allegations in paragraph 11 of the COMPLAINT.

12.     The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 12 of the COMPLAINT, and therefore denies the allegations in the first sentence of paragraph 12. The State admits that Mr. Kempthorne is sued in his official capacity.

13.     The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 13 of the COMPLAINT, and therefore denies the allegations in the first sentence of paragraph 13. The State admits that Mr. Hall is sued in his official capacity.

3

14.    The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 14 of the COMPLAINT, and therefore denies the allegations in the first sentence of paragraph 14. The State admits that Mr. Guertin is sued in his official capacity.

15.    Paragraph 15 of the Complaint constitutes Plaintiffs' characterization of the National Wildlife Refuge System Improvement Act of 1997 and requires no answer or response. The cited provisions speak for themselves and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 15.

16.    Paragraph 16 of the Complaint constitutes Plaintiffs' characterization of the U.S. Fish and Wildlife Service Manual and requires no answer or response. The cited provisions speak for themselves and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 16.

17.    Paragraph 17 of the COMPLAINT constitutes Plaintiffs' characterization of the National Environmental Policy Act and states legal conclusions for which no answer or response is necessary. The cited provisions speak for themselves and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 17.

18.    Paragraph 18 of the COMPLAINT constitutes Plaintiffs' characterization of the Administrative Procedure Act and states legal conclusions for which no answer or response is necessary. The cited provisions speak for themselves and are the best

evidence of their contents.  To the extent that an answer or response is required, the State

denies the allegations in paragraph 18.

19.    The State admits the allegation in the first sentence in paragraph 19 of

Plaintiffs' COMPLAINT.  The remaining allegations in paragraph 19 require no answer or

response.  To the extent that an answer or response is required, the State denies the

remaining allegations in paragraph 19.

20.    The State denies the allegation in the first sentence in paragraph 20 of

Plaintiffs' COMPLAINT.  The State admits the allegations in the second, third, and fourth

sentences of paragraph 20.  The State denies the allegations in the fifth sentence of

paragraph 20.  The State is without knowledge or information sufficient to form a belief

as to the truth of the allegations in the sixth and seventh sentences of paragraph 20, and

therefore denies those allegations.

21.    The State denies the allegations in paragraph 21 of Plaintiffs' COMPLAINT.

22.    Paragraph 22 of the COMPLAINT appears to constitute Plaintiffs'

characterization of the Bruce L. Smith article for which no answer or response is

necessary.  The cited document speaks for itself and is the best evidence of its content.

To the extent that an answer or response is required, the State denies the allegations in

paragraph 22.

23.    The State is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 23 of the COMPLAINT, and therefore denies the

allegations in paragraph 23.

5

24.     The State admits the allegations in the first sentence of paragraph 24 of the COMPLAINT. The State denies the remaining allegations in paragraph 24.

25.     The State admits the allegations in the first sentence of paragraph 25 of the COMPLAINT. The State denies the remaining allegations in paragraph 25.

26.     The State admits the allegations in the first sentence of paragraph 26 of the COMPLAINT.  The State denies the remaining allegations in paragraph 26.

27.     The State denies the allegations in paragraph 27.

28.     Paragraph 28 of the COMPLAINT constitutes Plaintiffs' characterization of the environmental impact statement cited therein and requires no answer or response. The document speaks for itself and is the best evidence of its contents.  To the extent that an answer or response is required, the State denies the allegations in paragraph 28.

29.     Paragraph 29 of the COMPLAINT constitutes Plaintiffs' characterization of the environmental impact statement and comments and responses cited therein and requires no answer or response.  The documents speak for themselves and are the best evidence of their contents.  To the extent that an answer or response is required, the State denies the allegations in paragraph 29.

30.     The State denies the allegations in the first and third sentences of paragraph 30 of the COMPLAINT.  The State is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 30 and therefore denies those allegations.

31.     Paragraph 31 of the COMPLAINT constitutes Plaintiffs' characterization of the environmental impact statement and Management Plan and requires no answer or

6

response.   The documents speak for themselves and are the best evidence of their contents.   To the extent that an answer or response is required, the State denies the allegations in paragraph 31.

32.     The first sentence of paragraph 32 of the COMPLAINT is a statement that requires no answer or response.  To the extent that an answer or response is required, the State denies the allegations in the first sentence of paragraph 32.   The State denies the remaining allegations in paragraph 32.

33.     Paragraph 33 of the COMPLAINT constitutes Plaintiffs' characterization of the Federal Register Document and environmental impact statement and comments and responses cited therein and requires no answer or response.   The documents speak for themselves and are the best evidence of their contents.   To the extent that an answer or response is required, the State denies the allegations in paragraph 33.

34.     Paragraph 34 of the COMPLAINT constitutes Plaintiffs' characterization of the final environmental impact statement and requires no answer or response.   The document speaks for itself and is the best evidence of its contents.   To the extent that an answer or response is required, the State denies the allegations in paragraph 34.

35.     Paragraph 35 of the COMPLAINT constitutes Plaintiffs' characterization of the Management Plan and final environmental impact statement and requires no answer or response.  The documents cited speak for themselves and are the best evidence of their contents.   To the extent that an answer or response is required, the State denies the allegations in paragraph 35.

36.    Paragraph 36 of the COMPLAINT constitutes Plaintiffs' characterization of the Management Plan and final environmental impact statement and requires no answer or response. The documents cited speak for themselves and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 36.

37.    The State incorporates its responses to paragraphs 1 through 36 of the COMPLAINT as if fully set forth herein.

38.    Paragraph 38 of the COMPLAINT constitutes Plaintiffs' characterization of the National Wildlife Refuge System Improvement Act and requires no answer or response. The provisions cited speak for themselves and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 38.

39.    The State denies the allegations in paragraph 39 of Plaintiffs' COMPLAINT.

40.    Paragraph 40 of the COMPLAINT states legal conclusions for which no answer or response is necessary. To the extent that an answer or response is required, the State denies the allegations in paragraph 40.

41.    The State incorporates its responses to paragraphs 1 through 40 of the COMPLAINT as if fully set forth herein.

42.    Paragraph 42 of the COMPLAINT constitutes Plaintiffs' characterization of the National Environmental Policy Act, case law, and the final environmental impact statement and requires no answer or response. The documents cited speak for themselves

and are the best evidence of their contents. To the extent that an answer or response is required, the State denies the allegations in paragraph 42.

43. Paragraph 43 of the COMPLAINT states legal conclusions for which no answer or response is necessary. To the extent that an answer or response is required, the State denies the allegations in paragraph 43.

44. The remaining paragraphs in Plaintiffs' COMPLAINT are the requests for relief, to which no answer or response is required. To the extent that an answer or response is required, the State denies Plaintiffs' requests for relief set forth in the COMPLAINT.

45. The State denies any allegation in Plaintiffs' COMPLAINT which has not herein specifically been admitted.

## AFFIRMATIVE DEFENSES

1. Plaintiffs have brought this action in an improper venue.

2. The allegations in the COMPLAINT fail to state a claim upon which relief may be granted.

3. The Record of Decision and the April 2007 Bison and Elk Management Plan for the National Elk Refuge do not violate any provision of the National Wildlife Refuge System Improvement Act of 1997.

4. The environmental impact statement does not violate any provision of the National Environmental Policy Act.

5. The U.S. Fish and Wildlife Service, Dirk Kempthorne, H. Dale Hall, and Stephen Guertin did not act arbitrarily or capriciously in issuing the Record of Decision

9

and/or in adopting the April 2007 Bison and Elk Management Plan for the National Elk Refuge.

6.      The State reserves the right to name additional affirmative defenses as they may be discovered after the filing of this ANSWER and before trial.

WHEREFORE, Applicant-Defendant-Intervenor, the State of Wyoming, requests that Plaintiffs take nothing by way of their COMPLAINT, that judgment be entered in favor of Defendants and against Plaintiffs, and that the State of Wyoming be awarded costs, including reasonable attorney fees, and such other relief as this Court deems just and appropriate.

Respectfully submitted this 20th day of August, 2008

APPLICANT-DEFENDANT-
INTERVENOR, STATE OF WYOMING

Kenneth J. Miller
Senior Assistant Attorney General
kmille2@state.wy.us

C. Levi Martin
Senior Assistant Attorney General
Wyoming Attorney General's Office
123 Capitol Building
Cheyenne, WY  82002
(307) 777-6946
(307) 777-3542 – Facsimile
lmarti@state.wy.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2008, a true and correct copy of the foregoing [PROPOSED] ANSWER OF APPLICANT-DEFENDANT-INTERVENOR STATE OF WYOMING  was served by placing same in the United States Mail, postage pre-paid, addressed to:

Timothy J. Preso
Sean M. Helle
EARTHJUSTICE
209 S. Willson Avenue
Bozeman, MT 51715

Sierra B. Weaver
DEFENDERS OF WILDLIFE
1130 17th Street NW
Washington, DC 20036

Robert Morgan
NATIONAL WILDLIFE REFUGE
ASSOCIATION
1901 Pennsylvania Ave., NW, Suite 407
Washington, DC 20006

Ronald J. Tenpas
Assistant Attorney General
Lori Caramanian
Environment & Natural Resources Div.
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294

Wyoming Attorney General's Office

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ———————————————————— | ) | |
| DEFENDERS OF WILDLIFE, JACKSON | ) | |
| HOLE CONSERVATION ALLIANCE, | ) | |
| NATIONAL WILDLIFE REFUGE | ) | |
| ASSOCIATION, GREATER YELLOWSTONE | ) | |
| COALITION, WYOMING OUTDOOR | ) | Docket No. 1:08-cv-00945-RJL |
| COUNCIL, | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, in his official Capacity | ) | |
| as the Secretary of the Interior, and H. DALE | ) | |
| HALL, in his official capacity as Director, U. S. | ) | |
| Fish and Wildlife Service, and STEPHEN | ) | |
| GUERTIN, in his official capacity as Regional | ) | |
| Director, Region 6, U.S. Fish and Wildlife | ) | |
| Service | ) | |
| | ) | |
|       Defendants, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| STATE OF WYOMING | ) | |
| | ) | |
|       Applicant-Defendant-Intervenor | ) | |
| ———————————————————— | ) | |

**(Proposed)**
**ORDER GRANTING APPLICANT-DEFENDANT-INTERVENOR STATE OF
WYOMING'S MOTION TO INTERVENE**

UPON CONSIDERATION of the Motion of the State of Wyoming to Intervene as party defendants in the above action pursuant Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure and Rule 7(j) of the Local Rules, and for good cause shown, it is hereby:

**ORDERED** that the Motion of the State of Wyoming to Intervene is **GRANTED,** and that the State of Wyoming is hereby accorded party status as defendants as of right in this case.

**DATE:** _____    _____

                               **UNITED STATES DISTRICT COURT JUDGE**